IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SAFECO INSURANCE COMPANY OF ILLINOIS, ET AL.** : | |
| : | |
| v. : | CIVIL ACTION NO. 20-3877 |
| : | |
| **NIKOLAI GASIOROWSKI, ET AL.** : | |

**MCHUGH, J.**                                                                                                                 **July 5, 2022**

**<u>MEMORANDUM</u>**

      Safeco Insurance brings this action seeking a declaration that it has no duty to defend or indemnify its insured in a personal injury case arising out of a physical altercation that resulted in a criminal assault charge.  Safeco is currently providing a defense in the underlying civil case, which was filed after its insured, Nikolai Gasiorowski, punched and then tackled Ilan Avizohar, because he was trespassing on a PECO property that Gasiorowski was licensed to use.  In his complaint, Avizohar alleged that in April 2018, Gasiorowski "menacingly approached" Avizohar as he led a horseback ride through the PECO property, pulled Avizohar off his horse, struck him in the face, and pinned him down. Gasiorowski was criminally charged and pled *nolo contendere* to simple assault, harassment, and false imprisonment.

      Safeco argues that a criminal acts exclusion in the insurance policy bars coverage for the underlying claim. I previously denied Safeco's motion to dismiss, holding that Gasiorowski's *nolo* plea did not suffice to prove he committed a criminal act, and further holding that there were factual issues as to whether his use of force was privileged.  Discovery is now complete, and Safeco returns with a motion for summary judgment, buttressed by a video of the incident.   Upon review, I am convinced that this case falls within the rule established by *Scott v. Harris*, 550 U.S. 372, 380

(2007): "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Because the video incontrovertibly shows that no reasonable jury could find that Gasiorowski was acting in self-defense, I conclude that summary judgment is warranted.

## I. Legal Standard

This motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). Disposition of an insurance coverage action on summary judgment is appropriate when there are no material underlying facts in dispute. *McMillan v. State Mut. Life Assur. Co.*, 922 F.2d 1073, 1074 (3d Cir. 1990) (citations omitted).

## II. The Factual Record

In the final analysis, it is the video of the encounter that controls the outcome in this case. But a fuller discussion of the record provides useful context and, to some degree, is relevant to an evaluation of Gasiorowski's claim of self-defense.

A. *The PECO Parcel*

On January 1, 2017, Defendant Gasiorowski and PECO Energy Company ("PECO") executed an agreement which granted Gasiorowski the right to farm on a PECO parcel in New Hope, PA. License Agreement, Ex A to First Am. Compl, ECF 1-4; Gasiorowksi Dep. at 108:7-9, Ex. 9 to Pl.'s Mot. Summ. J, ECF 33-13. A gravel road underneath power lines (hereinafter "the Power Line Trail") runs through that parcel and neighboring parcels of land. *See* Richard Barca Decl. ¶ 15, ECF 33-3; Property Map, Ex. 11 to Pl.'s Mot. Summ. J., ECF 33-15. Pursuant to the License Agreement between Gasiorowski and PECO, Gasiorowski agreed to "protect the

Premises from any and all trespassers and adequately to notify and warn the public that the Premises is private property and that all trespassing is prohibited." License Agreement ¶ 2. The record reflects that Gasiorowksi undertook that task with vigor. He posted the area with no trespassing signs, John Merana Dep. at 75:10-11, Ex. 2 to Def.'s Resp.,[1] ECF 35-5, as did his neighbor, Eric Mendola, Eric Mendola Dep. 52:4, Ex. 3 to Def.'s Resp. ECF 35-6. He also installed cameras along the trail to identify potential trespassers, even on portions of the trail that were not subject to the license agreement.[2] Gasiorowksi Dep. at 58:17-18, 80:2-19, Ex. 9 to Pl.'s Mot. Summ. J.; Donald Roberts Dep. at 37:15-25, Ex 7 to Pl.'s Mot. for Summ. J., ECF 33-11.

Gasiorowski's neighbors expressed concerns over Gasiorowski's aggressive attempts to ensure that there was no trespassing on the Power Line Trail, which had previously been a path walked on by individuals in the community. Merana Dep. at 22:7-23. Neighbor John Merana "received a number of phone calls from a number of individuals" who were challenged by Gasiorowski as they were "getting onto the trail" about a half mile from the PECO property. *Id.* at 28:2-11. The neighbors reported "various challenges, conversations, arguments, yelling matches" and verbal altercations with Gasiorowski. *Id.* at 28:20-24. Merana became so concerned about Gasiorowski's behavior that he contacted John Halderman, PECO's general counsel, to

---

[1] Counsel for Defendant Gasiorowski did not label the exhibits, but this is the second exhibit attached to Defendant's response.

[2] Gasiorowski was ultimately required to remove the cameras he installed on the property to which he had no rights. Gasiorowski Dep. at 80:30-81:3, Ex. 9 to Pl.'s Mot. Summ. J. Gasiorowski was asked, "And did you install cameras at the Chapel Hill Road entrance to the utility road?" to which he responded, "I did once, yes." When asked if PECO gave him permission to do that, he responded, "[t]hey asked me to remove it" and admitted that he did not have permission to install the camera. *Id.*

As additional proof of his zealousness in protecting against trespassers, Gasiorowski sent "surveillance pictures" to neighbors because he wanted help identifying individuals who were trespassing. Merana Dep. at 33:5-12, 34:20-25.

express concerns that if Gasiorowski continued to hold a license to the PECO property, "something bad was going to happen." *Id.* at 22-25.[3]

B. *Prior Incidents Between Gasiorowski and Avizohar*

According to Gasiorowski, the altercation giving rise to the underlying lawsuit was not the first time that Avizohar had trespassed on the property, nor was it the first time that the parties had engaged in a heated exchange.

Specifically, in Fall 2016, Gasiorowski alleges that he was walking with his son and daughter when Avizohar "came thundering by [on his horse] and was a matter of feet from running [Gasiorowski's] daughter over" while he was riding on the Power Line Trail. Gasiorowski Dep. at 141:7-142:3, Ex. 6 to Def's Resp. Gasiorowski yelled at him to slow down, and Avizohar purportedly "yelled some expletives, gave [him] the middle finger and then kept going," after which Gasiorowski contacted the police. *Id.* at 144:21-145:2.

In August 2017, Gasiorowski witnessed Avizohar riding a quad on the Power Line Trail and stood in the middle of the trail to block his path. *Id.* at 147:4-16. Gasiorowski reports that Avizohar then "rode into [him]" but because he jumped back, he "only got a bruise [but]...could have broken [his] leg." *Id.* at 148:6-10. On the other hand, Avizohar maintains that he did not physically come into any contact with Gasiorowski because he stopped the quad a couple of feet from him when he saw him in the road. Avizohar Dep. 59:2-10, Ex. 4 to Pl.'s Mot. Summ. J., ECF 33-8. The parties then exchanged words about whether Avizohar could ride on the property at which point Gasiorowski alleges that Avizohar pointed to a gun that Gasiorowski had in his tractor,

---

[3] The bottom of Merana's email reads "All along [Gasiorowski] has been aggressively verbally yelling at anyone that just wants to walk their dog, watch the leaves turn in the fall and get some fresh air. In the end, something bad is going to happen here if left as it is." Merana Dep. at 61:21-25; Email, Ex. 3 to Pl.'s Mot. Summ. J., Ex. 13.

Gasiorowski Dep. at 147:14-19, Ex. 6 to Def's Resp., and said "I see you have a gun up there. I don't care. I will still kill you."[4] *Id.* at 149:6-17. Gasiorowski called the police to report the incident. *Id.* at 150:17-151:11. Avizohar alleges that during the incident Gasiorowski said "fuck the Jews" which Gasiorowski denies saying. Gasiorowski Dep. at 153:17:154:1, Ex. 6 to Def's Resp.

C. *The Incident Giving Rise to the Underlying Lawsuit*

On April 28, 2018, Avizohar and Gasiorowski had another encounter which forms the basis for the underlying suit against Gasiorowski. That day, Avizohar went horseback riding on the Power Line Trail with two companions, Max Levy and Zach Chasin. *See* Zach Chasin Dep. at 17:3-18:17, Ex. 5 to Pl.'s Mot. Summ. J., ECF 33-9; Max Levy Dep. at 10:20-11:6., Ex. 6 to Pl.'s Mot. Summ. J., ECF 33-10. They rode through a portion of property claimed to be owned by Gasiorowski's neighbor Eric Mendola. Mendola Dep. at 47:16-21, 48:1-7. 48:19-25, Ex. 8 to Pl.'s Mot. Summ. J., ECF 33-12. Upon seeing the men riding horses on the trail, Mendola confronted them because "[it is] private property and they're not allowed to be there" after which a tense exchange ensued. *Id.* at 48:25-49:1, 50:8-51:15. Instead of turning around as demanded by Mendola, Avizohar and his companions walked around Mendola and exited his property in the direction of the PECO parcel. *Id.* at 51:10-15, 54:6-12. Mendola then called the police to report trespassing. *Id.* at 53:5-9. He also called Gasiorowski "to let him know there were trespassers coming through" and that "the police would be meeting them..." *Id.* at 55:10-15.

When Gasiorowski received Mendola's call, he was on PECO property collecting soil samples. Gasiorowski Dep. at 173:1-15, Ex. 9 to Pl.'s Mot. Summ. J. He drove his UTV (Utility

---

[4] Avizohar testified that during this encounter, Gasiorowski first had the gun on his shoulder but when he asked Gasiorowski to put the gun away, Gasiorowski obliged and put it in the back of his tractor where it remained during the encounter. Avizohar Dep. 58:2-12, Ex. 4 to Pl.'s Mot. Summ. J.

5

Terrain Vehicle) toward the horseback riders "aggressively... at a pretty high speed." Chasin Dep. 30:16-18, and accelerated to intercept them, Gasiorowski Dep. at 180:11:17, Ex. 9 to Pl.'s Mot. Summ. J.  Gasiorowski does not dispute that when he approached the horseback riders, he got out of his UTV and parked it in the middle of the Power Line Road, about 50 feet away from Avizohar and his companions.  *Id.* at 181:18-182:10.  Gasiorowski further admits that he began "shouting as loud as [he] could, [and] demanding they get down [off the horses and] get off private property." Gasiorowski Dep. at 185:15-21, Ex. 6 to Def's Resp., ECF 35-7.

What happens next is disputed.  Gasiorowski alleges that in response to his demand that Avizohar and his companions get off their horses, Avizohar started yelling profanities and threatening "I'll run you over."  *Id.* at 186:6-18.  Gasiorowski again demanded that Avizohar "get down" from the horse.  *Id.* at 186:21.  As Avizohar continued to walk his horse on the road, Gasiorowski neither moved out of the roadway nor backed away from Avizohar.  *Id.* at 188:10-18.  According to Gasiorowski, Avizohar then pulled the reins of the horse, causing the horse's head to strike Gasiorowski's, head, breaking his sunglasses.[5]  *Id.* at 186:21-187:20; Def.'s Resp. at 4, ECF 35-1.  Avizohar then put his heels into the horse, making the horse "go forward" to "hit or trample [Gasiorowski]" while Gasiorowski was ducked in front of the horse.  *Id.* at 187:9-11.  In response, Gasiorowski "grabbed the saddle to hang on [to the horse] where the horse hooves couldn't step on [him]."  *Id.* at 188:4-6.  Avizohar then grabbed his wrist, and "wrist grabbing" ensued between the men, at which point Gasiorowski "held on and leaned in" and Avizohar fell off the horse.  *Id.* at 188:6-9.

---

[5] During his deposition, Gasiorowski reported that Avizohar "walked all the way up to [him], he pulled the reins of the horse at [him] while swearing and hit [him] in the head with the horse's head with the horse's head via the reins." Gasiorowski Dep. at 186:21-187:3, Ex. 6 to Gasiorowski's Repl., ECF 35-7

Avizohar's companions provide a different narrative. According to them, Gasiorowski used his UTV to block the horseback riders from continuing to ride down the path. Levy Dep. 24: 11-14, Chasin Dep. 30:10-18, 32:3-9, 34:1-8. When Gasiorowski requested that the riders dismount, they refused. Gasiorowski Dep. at 181:13-1, 182:2-3, 182:14-16, Ex. 9 to Pl.'s Mot. Summ. J. As Avizohar tried to pass Gasiorowski "not fast, the horse was maybe walking, maybe at a standstill," Gasiorowski got in front of Avizohar, grabbed his shirt, and pulled him off the horse. Levy Dep. 25:24-26:2; Avizohar Dep. 93:12-94:3, 95:22-96:3, Ex. 4 to Pl.'s Mot. Summ. J., ECF 33-8.[6]

The next events in the altercation were recorded on video by one of Avizohar's companions. Ex 17 to Pl.'s Mot. Summ. J. Although Gasiorwoski argues that "the video starts with Avizohar advancing towards Defendant Gasiorowski with his right arm raised and tucked close to his body and his left arm at his side," and Avizohar advancing and "relentless[ly] march[ing] toward Gasiorowoski" Def.'s Resp. at 5, the footage itself contradicts his description. On the video, Avizohar can be seen taking two steps, moving slowly on an angle to Gasiorowski's left, on a course to go around him. Avizohar's left arm is at his side, with his right hand, palm open, at chest level, in a decidedly non-aggressive posture. Avizohar can be partially heard in a low voice saying "I'm not….." before being stunned by a blow. Gasiorowski can be heard commanding Avizohar in an excited tone to "sit down" or "get down," which Avizohar does not do.[7] In response, Gasiorowski punches Avizohar in the face, dealing a blow so forceful that

---

[6] Mr. Chasin testified, "I recall Mr. Gasiorowski taking Ilan [Avizohar] off, forcibly off the horse." Chasin Dep. 34:2-8.

[7] During his deposition, Avizohar testified that after being pulled from the horse, he stood with the horse to the side of him and with his hand up, indicating that he was not going to fight. He said, "I am not going to fight...I not come to fight." Avizohar Dep. 59:17-20.

7

Avizobar falls to the ground.  Once on the ground, Gasiorowski sits on top of Avizobar and holds him down, refusing to let him move while he calls the police.  While pinning him down, he repeatedly and aggressively screams "don't move."  At approximately the one minute twenty second mark of the video, Gasiorwoski tells the police dispatcher that the "the same trespasser came over" so he approached Avizobar who then threatened him.[8]  At approximately the three-minute mark on the video, Gasiorowski, who is leaning his body weight against Avizobar and pressing his arm into the ground, can be heard telling the dispatcher that "I'm telling him [Avizohar] to stay here until the police get here."[9]  Gasiorowski held Avizohar down on the ground until the police arrived.  Chasin Dep. at 35:25-36:14; Gasiorowski Dep. at 201:7-9, Ex. 9 to Pl.'s Mot. Summ. J.

  D. *Criminal Charges Arising from the April 28, 2018 Altercation*

As a result of the April 28, 2018 encounter, Gasiorwoski was charged with aggravated assault, false imprisonment, simple assault, disorderly conduct and harassment.  Barca Decl. ¶ 4, Crim. Compl. Ex. 1 to Pl.'s Mot. Summ. J., ECF 33-5.  On October 18, 2018, Gasiorowski entered a *nolo contendere* plea to the charges of false imprisonment and simple assault.  Barca Decl. ¶ 5.  During the sentencing hearing, Gasiorowski testified under oath that he was struggling with a family tragedy around the time of the incident and that "regret[s] any type of pain and suffering" that he caused.  Sentencing Tr. at 12:7-13:8, Ex. 3 to Pl.'s Mot. Summ. J., ECF 33-7.  Gasioworski further told the sentencing judge that he "overreacted" out of "frustration of persons trespassing on [his] property and the failure of the Solebury police to

---

[8] One of Avizobar's companions can be heard on video stating, "he didn't threaten anybody."

[9] One of Avizobar's companions can be heard on video stating that Gasiorowski grabbed Avizobar off of the horse. "[Gasiorowski] jumped on the horse and... tackled him off."

respond to it" and because he felt vulnerable due to the "degrading things" that Avizohar and his companions would shout at him. *Id.* at 15:12-14, 15:6-11, 16:21-17:1, 17:14-22. Gasiorowski was sentenced to two years of probation for simple assault and false imprisonment. *Id.* 20:12-20.

E. *Safeco Policies*

Gasiorowski's homeowner's policy describes personal liability coverage as follows:

**LIABILITY LOSSES WE COVER**

**COVERAGE E — PERSONAL LIABILITY**

If a claim is made or a suit is brought against any insured for damages because of **bodily injury** or **property damage** caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable;
2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

Compl. Ex. B, at 14, ECF 1-5. The Safeco policy defines "occurrence" as an "an accident, including exposure to conditions which results in (1) bodily injury . . . during the policy period." *Id.* at 25.

The Safeco policy also contains a criminal acts exclusion:

**LIABILITY LOSSES WE DO NOT COVER**

**1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to *bodily injury or property damage*:

. . . .

> b. which results from violation of criminal law committed by, or with the knowledge or consent of any *insured*.

> This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

9

*Id.* at 14–15.[10] Safeco agreed to defend Gasiorowski subject to a reservation of rights, which cites the criminal acts exclusions found in both the primary and umbrella policies. Compl. Ex. D, at 6, ECF. 1-7; Compl. Ex. E, at 7, ECF 1-8.

**III.     Discussion**

    *A.  Safeco Has No Duty to Defend or Indemnify Because Gasiorowski's Conduct Falls Within the Criminal Acts Exclusion*

Under Pennsylvania law an insurer has a duty to defend if the injured party's complaint comes within the policy's coverage. *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985); *Frog. Switch & Mfg Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). To determine the insurer's obligation, the court examines both the factual allegations in the complaint and the language of the insurance policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009). The "factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog, Switch, & Mfg. Co.*, 193 F.3d at 746. Finally, if the court finds that there is no duty to defend, then there is no duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).

The Safeco Insurance Policy provides for coverage "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." Compl. Ex. B at 14, ECF 1-5. However, as set forth in Safeco's criminal act exclusion, there is no coverage for bodily injury "which results from violation of criminal law committed by, or with knowledge or consent of any insured." ECF. 1-5, Ex B. at 24. The criminal acts exclusion bars coverage for bodily injury "which results from violation of criminal law committed by, or with knowledge or consent of any insured." *Id.*

---

[10] Gasiorowski also has an umbrella policy with Safeco. The umbrella policy includes a similar criminal acts exclusion. See Compl. Ex. C, at 9, ECF 1-6

Moreover, the exclusion applies "whether or not any insured is charged or convicted of a violation of criminal law, or local or municipal ordinance." *Id.* Under Pennsylvania law, "[t]he criminal acts exclusion is not ambiguous. It applies to 'intentional or criminal acts' not just criminal acts." *Allstate Ins. Co. v. Williams*, No. 13-3048, 2014 WL 4682022, at *4 (E.D. Pa. Sept. 22, 2014).

Although Gasiorowski does not dispute that the criminal exclusion act is unambiguous, he argues that there is a dispute of material fact as to whether his actions were criminal. Def.'s Resp. at 7. As an initial matter, I have already reasoned that Gasiorowski's *nolo contendere* plea does not conclusively establish that his conduct was criminal because a *nolo contendere* plea is not admissible in a subsequent civil or criminal case against the defendant who made the plea.[11] ECF 19. Nonetheless, the video incontrovertibly shows that Gasiorowski punched Avizobar and then pinned him to the ground to restrain him for a length of time.

Gasiorowski argues that he should nonetheless receive the insurance coverage because he was acting in self-defense. Under Pennsylvania law, use of force is justifiable "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a); *Commonwealth v. Torres*, 766 A.2d 342, 223-34 (Pa. 2001). Self-defense encompasses both subjective and objective elements. Subjectively, the defendant "must have acted out of an honest, bona fide belief that he was in imminent danger," and objectively, that "belief must be reasonable

---

[11] Federal Rule of Evidence 410 provides that a *nolo contendere* plea is not admissible in a subsequent civil or criminal case against the defendant who made the plea. *See Allstate Ins. Co. v. Marinucci*, No. 94-20486, 1995 WL 271367, at *3 (N.D. Cal. May 3, 1995) (holding that a defendant's plea of *nolo contendere* to a felony assault charge was inadmissible in a subsequent civil action concerning an insurer's duty to defend). Substantively, under Pennsylvania law, a defendant that pleads *nolo contendere* does not admit guilt or having committed the alleged acts. *Commonwealth v. Moser*, 999 A.2d 602, 605 (Pa. Super. 2010). Pennsylvania courts have also held that a plea of nolo contendere cannot be "used against the defendant as an admission in any civil suit for the same act." *Commonwealth v. Ferguson*, 44 Pa. Super. 626, 628 (1910).

in light of the facts as they appeared to him." *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014).

Mr. Gasiorowski's self-defense claim fails.[12] Although Gasiorowski argues that his use of force was justified because Mr. Avizohar was "relentless[ly] march[ing] toward him, he was "suddenly surrounded" by Avizohar and his companions, and Avizohar had "previously threatened Gasiorowski with violence" Def's Resp. at 5, no reasonable juror could find that Gasiorowski reasonably believed that he was in imminent danger. As depicted in the video of the incident, Avizohar was slowly taking two steps on an angle that would lead him around Gasiorowski with his palm open in a non-aggressive manner, when Gasiorowski suddenly punched Avizohar so strongly that he fell to the ground. Even taking as true Gasiorowski's disputed allegation that before punching Avizohar, Avizohar had pulled on the reins of his horse, causing the horse's head to strike Gasiorowski, Avizohar was off the horse and was not acting aggressively. No reasonable juror could find that Gasiorowski was in imminent danger at the time that he threw the punch.[13] And although Gasiorowski argues that he was "suddenly surrounded" by three men, he fails to point to any evidence in the record indicating that Avizohar's companions were poised to charge at him. To the contrary, the video indicates that both companions were stationed at a distance

---

[12] Although Gasiorowski broadly argues that the criminality of his actions turns on both self-defense and defense of others or property, Gasiorowski Resp. at 7, the specific arguments he advances deal only with self-defense. As such, I do not separately address these defenses, except to note that they would fail for similar reasons.

[13] I have considered Gasiorowski's argument that Avizohar had previously threatened violence against him because "a number of factors, including whether complainant was armed, any physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of the complainant and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief." *Smith*, 97 A.3d at 787. Even assuming that the parties had previously engaged in tense and heated exchanges, the video evidence does not support a conclusion that force was "immediately necessary" for Gasiorowski to protect himself.

during the initial punch and restraint, and none of their comments are aggressive or threatening.[14] And in yet another contradiction, although Gasiorowski contends that his sunglasses were broken when Avizohar used his horse to butt his head, the video shows him wearing them throughout the altercation.

Gasiorowski's argument that he was acting in self-defense is further undermined by his statements under oath during the sentencing hearing on November 30, 2018, where, for purposes of seeking leniency, Gasiorowski effectively admitted that his conduct was not objectively reasonable. Specifically, in response to questions from his lawyer, he conceded that although he "felt threatened" during his interaction with Avizohar, he nonetheless overreacted. Sentencing Tr. at 15:9-14, Ex. 3 to Pl.'s Mot. Summ. J., ECF 33-7. *Id.* Gasiorowski now seeks to retract that admission:

> Q. So correct that you told the sentencing judge under oath that you overreacted?
>
> A. That's correct.
>
> Q. And your testimony today is that you did not overreact?
>
> A. Yes.
>
> Q. Did you tell the sentencing judge that you overreact - - strike that. Why did you tell the sentencing judge you overreacted?
>
> A. I was scared they might send me to jail.
>
> \*   \*   \*
>
> Q. And when you testified that you overreacted is that true testimony as well?

---

[14] I need not consider whether Gasiorowski was "free from fault" which is an essential element of self-defense under Pennsylvania law, *Commonwealth v. Hornberger*, 74 A.3d 279, 284 (Pa. Super. 2013), as I have has already determined that Gasiorowski's self-defense claim fails because no reasonable jury would find that the use of force was "immediately necessary" for Gasiorowski's protection from death or serious bodily injury.

>    A. I don't think so.

Gasiorowski Dep. at 209:2-11, 215:7-9.  Mr. Gasiorowski is not entitled to change his position before the courts because it suits his convenience.  Principles of judicial estoppel weigh strongly against such a result.  In simple terms, a party cannot play "fast and loose with the courts" by espousing a position in one forum, and then contradicting it in another to secure a procedural advantage.  *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 8 1 F.3d 355, 358 (3d Cir. 1996).

Finally, no reasonable juror could find it was permissible for Gasiorowski to pin Avizohar to the ground and physically restrain him until police arrived at the scene.  The use of confinement as force is only permissible "if the actor takes all reasonable measures to terminate the confinement as soon as he knows that he safely can." 18 Pa. C.S. §505(c).  Although Gasiorowski argues that he "could not safely terminate the confinement," the video shows an angry and aggressive Gasiorowski pinning Avizohar on the ground for multiple minutes while screaming "don't move, don't move," and yelling epithets as Avizohar writhed on the ground under his weight.  Gasiorowski argues that he could not safely end the confinement because he could not perform a proper search of Avizohar for weapons. Def.'s Resp. at 12.  But as caught on video, Gasiorowski can be heard telling the police dispatcher, "he threatened me and I hit him. I'm holding him on the ground before he pulls something on me" to which Avizohar responds, "I'm not pulling nothing."  Moreover, Gasiorowski's argument that he could not safely terminate the confinement because "three trespassers had access to horses that they could use to pursue and injure him," Def.'s Resp. at 12, is undermined by the statements made by Avizohar's companions. One companion can be heard on video remonstrating with Gasiorowski, and calmly stating, "we're not going anywhere," assuring Gasiorowski that they do not have weapons and were not threatening anyone, all while Gasiorowski continued to scream and hold Avizohar down.  Gasiorowski emphasizes that he was

14

outnumbered and that toward the end of the video, the "two additional trespassers beg[an] to approach [him]." *Id*. But the video makes clear that the companions' approach was nonthreatening: Mr. Levy, one of Avizohar's companions, had dismounted from his horse, and can be seen holding the reins of two horses while slowly walking toward bloodied Avizohar, who remains on the ground. Chasin Dep. at 30:4-9. And Avizohar's companions knew that the police were on the line and that their presence on the land had already been reported by another neighbor who had also called police. As a result, no reasonable juror could find that Gasiorowski's decision to restrain Avizohar was justified.[15]

## IV. Conclusion

Just as a picture is worth a thousand words, a video can sometimes tell the whole story. On the record here, the criminal acts exclusion operates to bar coverage for the underlying claim. I must therefore grant summary judgment for Safeco. An appropriate order follows.

/s/ Gerald Austin McHugh<br>United States District Judge

---

[15] As a result of this ruling, there is no insurance coverage available as a potential source from which Mr. Avizohar can recover for his injuries. But it is difficult to conceive of any jury verdict in the underlying case that would give rise to coverage. Given the evidence, Mr. Gasiorowski can only plead self-defense. If a jury were to find him liable, it would necessarily have concluded that he committed acts that were criminal in nature, and coverage would be barred. If it accepted his claim of self-defense, he would not be liable to Mr. Avizohar, and there would be no damages for Safeco to cover.